UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HENRY SO,<br><br>          Plaintiff,<br><br>    v.<br><br>HP, INC.,<br><br>          Defendant. | Case No. 22-cv-02327-BLF<br><br>**ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART** |

In this case, Plaintiff Henry So alleges that Defendant HP, Inc. ("HP") remotely transmits firmware updates to HP printers that make third-party ink and toner supply cartridges incompatible with those HP printers. He brings common law and state and federal statutory claims, and he seeks to represent both a California and a nationwide class of consumers who purchased the identified HP printers.

Now before the Court is HP's motion to dismiss under Rules 12(b)(1) and 12(b)(6). ECF No. 14 ("MTD"); *see also* ECF No. 19 ("Reply"). So opposes the motion. ECF No. 17 ("Opp."). The Court held a hearing on the motion on October 27, 2022. *See* ECF No. 28. For the reasons discussed on the record and explained below, the Court DENIES IN PART the motion to dismiss and GRANTS IN PART the motion to dismiss WITH LEAVE TO AMEND in part and WITHOUT LEAVE TO AMEND in part.

I.   **BACKGROUND**

As alleged in the Complaint, Defendant HP sells both printers and associated HP-branded ink and toner cartridges for use in its printers. ECF No. 1 ("Compl.") ¶¶ 20-21. For a cartridge to be compatible with a printer, both the hardware and the software must align. *Id.* ¶ 25. Each model of HP printer is compatible only with the associated cartridge model. *Id.* ¶ 24. HP has

competitors in the market for cartridges, as consumers can choose to buy cartridges from HP ("HP cartridges") or a different company ("third-party cartridges"). *Id.* ¶ 35. Third-party cartridges can be 25%-75% less expensive than HP cartridges. *Id.* ¶ 34.

So alleges that HP periodically pushes out firmware updates to its printers that prevent consumers from using third-party cartridges. Compl. ¶¶ 65-70. He claims that the firmware also causes the printer to "display a (false) error message" stating there is a "supply problem, cartridge communication error, or cartridge problem." *Id.* ¶ 68. Further, So alleges that HP installs technology in its printers that records data about the consumer's printing habits and transmits it back to HP without the consumer's knowledge or consent. *Id.* ¶¶ 51, 54-57. He asserts that this happens with "all models of HP printers that use ink supply cartridges," and he provides a "non-exhaustive list" of models that he alleges were affected ("Class Printers"). *Id.* ¶ 90.

So purchased a new HP OfficeJet Pro 6978 All-in-One Printer on November 22, 2018, and he purchased a new HP ENVY 7885 All-in-One Printer on April 10, 2021, both in California. Compl. ¶¶ 93-94. He had previously owned an HP OfficeJet 6962 All-in-One Printer, with which he used both HP cartridges and third-party cartridges. *Id.* ¶ 95. So alleges that HP sent out a firmware update in December 2020, and on or around December 16, 2021, his OfficeJet Pro 6978 stopped working with third-party cartridges, so he had to purchase an HP cartridge for the printer to function. *Id.* ¶¶ 98-99.

This lawsuit was filed on April 14, 2022. *See* Compl. The Complaint asserts claims for violation of the federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §§ 1030(a)(5)(A), 1030(a)(2)(C), and 1030(a)(4), Compl. ¶¶ 118-143 (Count 1); violation of the California Comprehensive Computer Data Access and Fraud Act ("CCDAFA"), Cal. Penal Code § 502 *et seq.*, Compl. ¶¶ 144-159 (Count 2); violation of all three prongs of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, Compl. ¶¶ 160-190 (Counts 3-5); violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*, Compl. ¶¶ 191-205 (Count 6); fraud by omission, Compl. ¶¶ 206-221 (Count 7); and violation of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, Compl. ¶¶ 222-236 (Count 8). So seeks to represent three classes: (1) a nationwide class of all persons

1   and entities who own a Class Printer or similar HP InkJet Printer (the "device owner class"); (2) a
2   nationwide class of all persons and entities who own a Class Printer that displayed a diagnostic
3   error due to HP's transmission of a firmware update (the "damages subclass"); and (3) a class of
4   all persons and entities residing in California and states with similar consumer protection statutes
5   who own a Class Printer that displayed a diagnostic error due to HP's transmission of a firmware
6   update (the "state consumer subclass").  *Id.* ¶¶ 105-117.

## II. FAILURE TO STATE A CLAIM – RULE 12(B)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.  *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  But the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).  While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable.  *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

### A.  Fraud

#### 1.  Rule 9(b)

When a party pleads a cause of action for fraud or mistake, it is subject to the heightened pleading requirements of Rule 9(b).  "In alleging fraud or mistake, a party must state *with*

3

1  *particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis
2  added). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged
3  generally." *Id.* Rule 9(b) requires that the circumstances constituting any alleged fraud be pled
4  "specific[ally] enough to give defendants notice of the particular misconduct . . . so that they can
5  defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford*
6  *Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Bly-Magree v. California*, 236 F.3d
7  1014, 1019 (9th Cir. 2001)). Claims of fraud must be accompanied by the "who, what, when,
8  where, and how" of the misconduct alleged. *Id.* If a "claim is said to be 'grounded in fraud' or to
9  'sound to fraud,' [then] the pleading of that claim as a whole must satisfy that particularity
10 requirement of Rule 9(b)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir.
11 2003).

12 The applicability of Rule 9(b) hinges not on the elements of the claim but rather on the
13 nature of the allegations themselves: "Rule 9(b) applies to 'averments of fraud' in all civil cases in
14 federal district court," including "particular averments of fraud" even when fraud is not an
15 essential element of the claim. *Vess*, 317 F.3d at 1103; *see also Kearns*, 567 F.3d at 1124 ("Where
16 fraud is not an essential element of a claim, only those allegations of a complaint which aver fraud
17 are subject to Rule 9(b)'s heightened pleading standard."). Fraud can thus be averred "by
18 specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word
19 'fraud' is not used)." *Vess*, 317 F.3d at 1105 (citations omitted).

20         **2. UCL fraud prong, CLRA, FAL, and common law fraud by omission**
21 Plaintiff brings four fraud-based claims: (1) violation of the fraud prong of the UCL,
22 Compl. ¶¶ 180-190 (Count 5); (2) violation of the FAL, *id.* ¶¶ 191-205 (Count 6); (3) violation of
23 the CLRA, *id.* ¶¶ 222-236 (Count 8); and (4) common law fraud by omission, *id.* ¶¶ 206-221
24 (Count 7).

25 "Broadly stated: The UCL prohibits 'any unlawful, unfair or fraudulent business act or
26 practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by the
27 FAL' ([Cal. Bus. & Prof. Code] § 17200); the FAL prohibits advertising 'which is untrue or
28 misleading, and which is known, or which by the exercise of reasonable care should be known, to

4

1  be untrue or misleading' ([*id.* at] § 17500); and the CLRA prohibits specified 'unfair methods of
2  competition and unfair or deceptive acts or practices' ([Cal.] Civ. Code § 1770, subd. (a))." *Hill v.*
3  *Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1301 (2011) (alterations omitted). All three statutes
4  prohibit fraudulent misrepresentations and omissions. *See In re Seagate Tech. LLC Litig.*, 233 F.
5  Supp. 3d 776, 788 (N.D. Cal. 2017). Further, courts in this district have consistently held that
6  "plaintiffs in misrepresentation cases must allege that they actually read the challenged
7  representations" to state a claim. *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-
8  MD-02752-LHK, 2017 WL 3727318, at *27-28 (N.D. Cal. Aug. 30, 2017) (citation omitted)
9  (dismissing UCL fraud claim for failure to plead actual reliance); *see also Bruton v. Gerber Prods.*
10 *Co.*, No. 12-CV-02412-LHK, 2014 WL 172111, at *6, *9 (N.D. Cal. Jan. 15, 2014) (citing *In re*
11 *Tobacco II Cases*, 46 Cal. 4th 298 (2009)) (dismissing UCL, FAL, and CLRA claims for lack of
12 statutory standing based on plaintiff's failure to allege he viewed alleged misrepresentations).
13     "Under California law, a claim of fraud by omission requires a showing of (1) the
14 concealment or suppression of material fact, (2) a duty to disclose the fact to the plaintiff, (3)
15 intentional concealment with intent to defraud, (4) justifiable reliance, and (5) resulting damages."
16 *Edwards v. FCA US LLC*, No. 22-cv-01871-WHO, 2022 WL 1814144, at *3 (N.D. Cal. June 2,
17 2022) (quoting *Lewis v. Google LLC*, 851 F. App'x 723, 725 (9th Cir. 2021)).
18              a.   Misrepresentation
19     HP argues that the fraud-based claims should be dismissed because So does not plead an
20 affirmative consumer-facing misrepresentation with particularity as required by Rule 9(b), and he
21 does not plead reliance on any alleged misrepresentations. MTD at 4-7. The Court agrees. As
22 discussed at the hearing, So does not allege an affirmative misrepresentation made to consumers.
23 The alleged misrepresentations identified in the Complaint, in which HP indicated printer owners
24 could use HP cartridges or third-party cartridges, were in investor materials and a strategic plan.
25 *See* Compl. ¶¶ 44, 46. And So does not plead reliance on an affirmative misrepresentation, as he
26 does not allege that he saw any of the alleged misrepresentations. *See id.* He alleges that he
27 "rightfully believed" he could use a third-party cartridge based on his experience with another HP
28 printer, *see id.* ¶ 95, but this does not constitute a misrepresentation by HP. Further, the parties

5

1  agree that So cannot allege reliance on the printer error messages, *see* Compl. ¶¶ 68, 72, as they

2  did not appear until after purchase.  MTD at 10-11; Opp. at 12-13.  The Court agrees that because

3  the error messages appeared after So purchased the printer, there is no reliance.

4      Therefore, the motion to dismiss any fraud-based claims based on an affirmative

5  misrepresentation is GRANTED WITH LEAVE TO AMEND.

           b. Omission

7      HP further argues that any fraud claims based on omission also fail because So does not

8  allege HP concealed a defect central to the printers' function.  MTD at 8-10.  To allege fraud by

9  omission, the omission must either (1) "be contrary to a representation actually made by the

10  defendant," or (2) "an omission of a fact the defendant was obliged to disclose." *Anderson v.*

11  *Apple Inc.*, 500 F. Supp. 3d 993, 1012 (N.D. Cal. 2020) (quoting *Hodsdon v. Mars, Inc.*, 891 F.3d

12  857, 861 (9th Cir. 2018)).  Here, the first prong is not alleged, so Plaintiff needs to show that HP

13  had a duty to disclose prior to sale that it would send out firmware that would make its printers

14  incompatible with third-party cartridges.  The law about a defendant's duty to disclose in

15  fraudulent omission cases is "marked by general disarray," largely because there are at least two

16  tests to determine whether a defendant has a duty to disclose.  *Hammerling v. Google LLC*, No.

17  21-cv-09004-CRB, 2022 WL 2812188, at *8 (N.D. Cal. July 18, 2022) (quoting *In re Toyota*

18  *RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1101-02 (N.D. Cal. 2021)).  The Court

19  agrees with the recent *Hammerling* decision as to the appropriate test.  *See* 2022 WL 2812188, at

20  *8 (collecting Ninth Circuit and Northern District of California cases adopting this test).  So must

21  allege that HP's omission "either (1) relates to an unreasonable safety hazard or (2) is material,

22  'central to the product's function,' and meets one of the four *LiMandri* factors." *Id.* (quoting

23  *Hodson*, 891 F.3d at 863).  "The *LiMandri* factors are (1) the defendant is in a fiduciary

24  relationship with the plaintiff; (2) the defendant had exclusive knowledge of material facts not

25  known to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; or (4)

26  the defendant makes partial representations but also suppresses some material facts." *Id.* at *7

27  (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)).

28      There are no allegations about a safety hazard here, so Plaintiff must allege that the

inability to use a third-party cartridge is "material, central to the product's function, and meets one of the four *LiMandri* factors." Plaintiff must also allege facts showing that HP intended to send the firmware updates at the time of purchase. Plaintiff has not done so. *See* Compl. Therefore, the motion to dismiss any fraud-based claims based on omission is GRANTED WITH LEAVE TO AMEND.

### c. Conclusion

HP's motion to dismiss the fraud-based claims brought under the fraud prong of the UCL, FAL, and CLRA, as well as the common law, is thus GRANTED WITH LEAVE TO AMEND.

### 3. California CCDAFA Fraud Claim

So brings a claim under the California Comprehensive Computer Data Access and Fraud Act. Compl. ¶¶ 144-159; *see* Cal. Penal Code § 502. He asserts claims under subsections (1)-(5) of Cal. Penal Code § 502(c). *See id.* ¶ 152. HP argues that So's claim under subsection (c)(1) should be dismissed to the extent it is based on fraud. MTD at 14-15. Subsection (c)(1) imposes liability on any person who "[k]nowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data." Cal. Penal Code § 502(c)(1). So argues that HP violated subsection (c)(1) by causing the Class Printers to display the false error messages, as these constituted "a scheme to defraud, deceive, and extort Plaintiff and Class Members to purchase new HP Original cartridges from HP." Compl. ¶ 152(a).

HP argues that the claim should fail because So "fails to plead the underlying fraudulent conduct with requisite particularity" required by Rule 9(b). MTD at 14-15. Because the claim sounds in fraud, Rule 9(b) applies. And the Court agrees that, for the reasons discussed above, Plaintiff has not pled fraud with particularity.

The motion to dismiss Plaintiff's claims under Cal. Penal Code § (c)(1 is GRANTED WITH LEAVE TO AMEND.

### 4. Other UCL Claims

The UCL prohibits any "unlawful, unfair or fraudulent business practice and unfair,

7

1  deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The California
2  Supreme Court has clarified that the UCL, because it is "written in the disjunctive," prohibits three
3  separate types of unfair competition: (1) unlawful acts or practices, (2) unfair acts of practices, and
4  (3) fraudulent acts or practices. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20
5  Cal. 4th 163, 180 (1999); *accord Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th
6  Cir. 2012). To plead a UCL claim, a plaintiff's allegations must show that a defendant's conduct
7  violates one of these three "prongs." *Id.* The Court already addressed So's claim under the
8  fraudulent prong of the UCL. *See surpa* Section II.B.2; *see also* Compl. ¶¶ 180-190 (Count 5). So
9  also brings claims under the unfair and unlawful prongs of the UCL. *See* Compl. ¶¶ 169-179
10 (Count 4) (unfair), ¶¶ 160-168 (Count 3) (unlawful).

      a. UCL unfair claim

12   So brings a claim under the unfair prong of the UCL. Compl. ¶¶ 169-179 (Count 4). HP
13 asserts that the unfair claim is based on the same "unified course of fraudulent conduct"
14 underlying the other fraud claims, and it should therefore be dismissed on the same basis as those
15 claims. MTD at 11. HP further argues that if So's unfair claim is grounded on anything other
16 than fraud, namely on the basis that HP requires its printers to be used with compatible cartridges,
17 it must be dismissed because other technology companies sell products that are only compatible
18 with certain other of their products. *Id.* at 11-12. Plaintiff counters that he has sufficiently
19 pleaded a unified course of fraudulent conduct. Opp. at 13-14. He identifies several "unfair
20 business practices and acts" that he alleged in the Complaint, including, among others, HP's sale
21 and promotion of the Class Printers with the knowledge that they could lose functionality; false
22 advertising; firmware update and resulting loss in functionality; and collection of usage data and
23 customer information. *Id.* at 14 (citing Compl. ¶ 173). Finally, Plaintiff tries to distinguish the
24 practices of other technology companies on the basis that those companies make clear to
25 consumers at the time of purchase that their products are only compatible with certain other of
26 their products. *Id.*

27   To the extent So's allegations and arguments rely on a "unified course of fraudulent
28 conduct" as the basis of the unfair UCL claim, the pleading must meet the heightened standard of

8

1    Rule 9(b). *See Vess*, 317 F.3d at 1103 (stating claim may be "grounded in fraud" if "plaintiff []
2    allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as
3    the basis of a claim"); *see also Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1051 (N.D. Cal.
4    2014) (applying Rule 9(b) to unfair UCL claim based on "unified course of fraudulent conduct").
5    As discussed above, the Court finds Plaintiff has not met this standard. *Cf. Eidmann v. Walgreen
6    Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021) ("In this District, when plaintiff's claim under the
7    unfair prong overlaps entirely with the conduct alleged in the fraudulent and unlawful prongs of
8    the UCL, 'the unfair prong of the UCL cannot survive if the claims under the other two prongs . . .
9    do not survive.'" (quoting *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1105 (N.D. Cal.
10   2017))). The Court therefore dismisses any allegations under the unfair prong that stem from "a
11   unified course of fraudulent conduct" by HP.
12        The motion to dismiss the unfair claim under the UCL as to allegations that sound in fraud
13   is GRANTED WITH LEAVE TO AMEND.
14             b.   UCL unlawful claim
15        Plaintiff also brings a claim under the unlawful prong of the UCL. Compl. ¶¶ 160-168
16   (Count 3). HP does not seek to dismiss this claim. *See* MTD.

17   **B.   CLRA notice requirement**

18        HP also seeks to dismiss the CLRA claim for lack of notice. MTD at 12. The CLRA
19   requires a plaintiff to provide notice to a defendant 30 days or more prior to the commencement of
20   an action for damages. Cal. Civ. Code § 1782(a). There is no such notice requirement for
21   injunctive relief claims under the CLRA. *Id.* § 1782(d). Further, the CLRA provides that not less
22   than 30 days after commencing an action for injunctive relief and providing notice, a consumer
23   may amend their complaint to include a request for damages. *Id.* Here, Plaintiff provided notice
24   to HP on March 28, 2022, and he filed his Complaint just 17 days later, seeking both injunctive
25   relief and damages under the CLRA. *See* Compl. ¶¶ 234, 236, Ex. B.
26        HP argues that the Court should dismiss the CLRA claims for damages on this basis
27   without leave to amend. MTD at 12. Plaintiff admits that the original request for damages under
28   the CLRA did not comply with the notice provisions, but because over 30 days have passed since

1  he provided notice, he asks for leave to amend his CLRA claim to seek damages. Opp. at 15. The
2  Court agrees that the original claim for damages under the CLRA did not comply with notice
3  requirements, and therefore it should be dismissed. *See* Cal. Civ. Code § 1782(a). But because
4  the statute specifically allows for amendment, the Court will grant leave to amend. *See id.* §
5  1782(d); *see also, e.g.*, *Deitz v. Comcast Corp.*, No. C 06-06352 WHA, 2006 WL 3782902, at *5-
6  6 (N.D. Cal. Dec. 21, 2006).

The motion to dismiss the CLRA for lack of notice is GRANTED WTH LEAVE TO AMEND.

### C. CFAA

So brings a claim under the CFAA, citing three subsections: 18 U.S.C. §§ 1030(a)(5)(A), 1030(a)(2)(C), and 1030(a)(4). Compl. ¶¶ 118-143. HP argues that the CFAA claims should be dismissed because So does not allege the required statutory damages of $5,000. MTD at 13. The CFAA requires So to allege $5,000 in damages. *See* 18 U.S.C. § 1030(g). He did not do so. *See* Compl. Under the CFAA, a class of plaintiffs may aggregate damages "so long as those damages arose from the same act by a defendant." *In re Apple & AT & TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1308 (N.D. Cal. 2008); *see also In re Toys R Us, Inc. Privacy Litig.*, No. 00-CV-2746, 2001 WL 34517252, at *11 (N.D. Cal. Oct. 9, 2001). So may plead aggregated damages as long as they stem from a single act by HP. The motion to dismiss the CFAA claim for failure to plead statutory damages is GRANTED WITH LEAVE TO AMEND.

HP further argues that the claim under subsection (a)(4) should be dismissed because it sounds in fraud, and the fraud is inadequately pled under Rule 9(b). MTD at 14. The statue forbids "knowingly and with intent to defraud, access[ing] a protected computer without authorization, or exceed[ing] authorized access, and by means of such conduct further[ing] the intended fraud and obtain[ing] anything of value . . . ." 18 U.S.C. § 1030(a)(4). Because the claim sounds in fraud, Rule 9(b) applies. And the Court agrees that Plaintiff has not pled fraud with particularity. The motion to dismiss Plaintiff's claim under § 1030(a)(4) is GRANTED WITH LEAVE TO AMEND.

### III. ARTICLE III STANDING – RULE 12(B)(1)

"[T]he 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 U.S. at 560-61). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)). HP makes three arguments as to standing.

#### A. Standing for Out-of-State Class Members

HP argues that So does not have standing to assert consumer protection and fraud claims on behalf of out of state class members. MTD at 15-22. Plaintiff asserts his UCL and FAL claims on behalf of the "device owner class," Compl. ¶¶ 160-205, which is a nationwide class, *id.* ¶ 106. He asserts his CLRA claim on behalf of the "state consumer subclass," *id.* ¶¶ 222-236, which includes "[a]ll persons and entities residing in California and States with a similar consumer protection statute to [the CLRA]," *id.* ¶ 106. Finally, Plaintiff brings his fraud by omission claim "on behalf of the Device Owner Class under California law or, alternatively, the State Consumer Subclass(es) under the law of the state in which each respective Plaintiff purchased a Class Printer." *Id.* ¶ 207.

HP first asserts that So does not have standing to assert any consumer protection or fraud claims under the laws of any state other than California. MTD at 16. HP also argues that California law cannot be applied to out-of-state class members. MTD at 17-22. So argues that he has standing and that California law can be applied to out-of-state class members. Opp. at 17-20.

HP's first argument, that So does not have standing to assert consumer protection or fraud claims under the laws of any state other than California, applies only to So's fraud by omission claim, as that is the only claim in which So seeks to apply non-California law. *See* Compl. ¶ 207 (seeking to bring claim "on behalf of the Device Owner Class under California law or, alternatively, the State Consumer Subclass(es) under the law of the state in which each respective Plaintiff purchased a Class Printer"). "Courts in the Ninth Circuit have consistently held that a

11

plaintiff in a putative class action lacks standing to assert claims under the laws of states other than those where the plaintiff resides or was injured." *Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 908 (N.D. Cal. 2019) (collecting cases). Because Plaintiff resides in and was injured in California, *see* Compl. ¶¶ 91-103, he does not have standing to assert claims under the laws of any other states. Therefore, Plaintiff cannot bring his fraud by omission claim under the common law of any state other than California.

HP's second argument gets to whether Plaintiff can bring his California consumer protection and fraud claims under the UCL, FAL, CLRA, and common law fraud by omission on behalf of a nationwide class. *See* MTD at 17-22. HP cites to *Mazza v. American Honda Motor Co.*, in which the Ninth Circuit rejected a nationwide class because "variances in state law overwhelm common issues and preclude predominance for a single nationwide class." 666 F.3d 581, 596 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022). As the court explained, "California law may only be used on a classwide basis if 'the interests of other states are not found to outweigh California's interest in having its law applied.'" *Id.* at 590 (quoting *Wash. Mut. Bank, FA v. Superior Ct.*, 24 Cal. 4th 906, 921 (2001)). The *Mazza* court then went on to conduct a detailed choice of law analysis, including examining the differences between California's consumer protection laws and those of other states in which class members bought cars. *Id.* at 590-94. It ultimately concluded that "under the facts and circumstances of [the] case, . . . each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Id.* at 594. HP argues that under the *Mazza* analysis, California law cannot apply on a nationwide basis. MTD at 17-22. HP also argues that choice of law analysis is proper at this stage because it is a purely legal issue and So cannot show further discovery is necessary for the analysis. *Id.* at 22. So argues that California law can be applied to a nationwide class because HP's actions occurred in California. Opp. at 17-20.

The Court agrees that under *Mazza*, choice of law issues might ultimately preclude a nationwide class. But as *Mazza* demonstrates, a detailed and fact-intensive inquiry is necessary to determine the substantive law applicable to class members' claims. Accordingly, the Court will

12

not decide this issue at this stage of the case. *See Cullen v. Shutterfly Lifetouch, LLC*, No. 20-cv-06040-BLF, 2021 WL 2000247, at *9 (N.D. Cal. May 19, 2021) (declining to address choice of law at "early stage of the case"); *see also Wallace v. SharkNinja Operating, LLC*, No. 18-cv-05221-BLF, 2020 WL 1139649, at *14-15 (N.D. Cal. Mar. 9, 2020); *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 572 (N.D. Cal. 2013); *cf. Cimoli v. Alacer Corp.*, 587 F. Supp. 3d 978, 986-87 (N.D. Cal 2022) (deciding choice of law at the pleading stage and distinguishing *Cullen* on the basis that the case at hand had already had an initial motion to dismiss, extensive discovery, and a first amended complaint).

The motion to dismiss for lack of standing on behalf of classes bringing claims under the laws of states other than California is GRANTED WITHOUT LEAVE TO AMEND and the motion to dismiss for lack of standing on behalf of a nationwide class under California law is DENIED WITHOUT PREJUDICE.

### B. Standing as to Other Printers

HP argues that So does not have standing for printers he did not purchase. MTD at 23-24. The Court takes the "substantially similar" approach to analyzing standing challenges, under which "a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Romero v. HP, Inc.*, No. 16-cv-05415-LHK, 2017 WL 386237, at *7 (N.D. Cal. Jan. 27, 2017) (quoting *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012)). But a plaintiff cannot "simply provide[] a list of products with a bare allegation that the misrepresentations are the same as for the [product] Plaintiff purchased." *Id.* at *8; *see also Arroyo v. TP-Link USA Corp.*, No. 5:14-cv-04999-EJD, 2015 WL 5698752, at *4 (N.D. Cal. Sept. 29, 2015).

Here, So simply provides a list of Class Printers and conclusory allegations that the misrepresentations are the same for all of them. *See* Compl. ¶¶ 89-90. This is not sufficient. Plaintiff must provide more specific factual allegations, such as "facts that indicate what misrepresentations [or omissions] were made with respect to each printer, and whether the misrepresentations were false [or omissions were required to be disclosed] as to each printer." *See*

*Romero*, 2017 WL 386237, at *8.

The motion to dismiss claims for other printers is GRANTED WITH LEAVE TO AMEND.

### C.   Standing for Injunctive Relief

HP also argues that So lacks standing to pursue injunctive relief. MTD at 24-25. "Standing for injunctive relief requires a plaintiff to establish a 'real and immediate threat of repeated injury.'" *Strojnik v. IA Lodging Napa First LLC*, No. 19-CV-03983-DMR, 2020 WL 2838814, at *5 (N.D. Cal. June 1, 2020) (quoting *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004)).

Plaintiff seeks an injunction requiring HP to (1) "reverse the effects of its malware transmissions" to make once-compatible third-party cartridges work again; (2) "cease accessing the Class Printers to obtain customer data without permission"; and (3) stop "sending such transmissions in the future" without owner consent. Compl. Prayer for Relief ¶ F. As to the first and third requests, HP asserts that because Plaintiff already purchased HP cartridges, he cannot show he will be wronged by future firmware updates, as he alleges they only affect printers using third-party cartridges. MTD at 25. As to the second request, HP asserts that So does not allege HP ever collected data from his printer specifically. *Id.* So relies on two cases from this district in arguing that the threat of future firmware updates combined with his alleged desire to go back to using third-party cartridges, is sufficient to allege standing for injunctive relief. Opp. at 21-22.

In *Parziale v. HP*, the court was confronted with a similar factual scenario to that at issue here. 445 F. Supp. 3d 435 (N.D. Cal. 2020). The court distinguished *Davidson*, a Ninth Circuit case holding that a plaintiff can establish standing to pursue injunctive relief against false labeling or advertising by alleging that they desire to purchase the product at issue in the future, on the basis that Parziale alleged he still owned the printers and raised claims not based on false advertising, such as a CFAA claim, in which the conduct is capable of repetition without purchasing another printer. *Id.* at 451-52 (citing *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018)). The *Parziale* court determined that "the threat of a future firmware update that could further modify Plaintiff's printers is sufficiently 'concrete and particularized' to establish

14

standing, even in the absence of any allegations as to Plaintiff's desire to purchase another printer." *Id.* (citing *Spokeo*, 578 U.S. at 339-40). The court found the injury was "particularized" because it would affect Plaintiff in a "personal and individual way." *Id.* (internal quotation marks and citation omitted). Further, the injury was "sufficiently concrete, considering that Plaintiff alleges a history of lawsuits based on similar misconduct by HP." *Id.*

The Court here agrees with the approach in *Parziale*. Plaintiff has standing to seek injunctive relief because he could be harmed by future firmware updates from HP. While Plaintiff has purchased HP cartridges, he alleges he would like to use third-party cartridges again in the future. Compl. ¶ 103; *see Mobile Emergency Hous. Corp. v. HP, Inc.*, No. 20-cv-09157-SVK, Dkt. 52, at *22-23 (N.D. Cal. Oct. 15, 2021) (noting plaintiffs' allegations that they would like to use third-party cartridges in the future in deciding there was standing for injunctive relief under *Parziale*).

HP's motion to dismiss So's claims for injunctive relief for lack of standing is thus DENIED.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that HP's motion to dismiss is:

1. GRANTED WITH LEAVE TO AMEND, as to the fraud-based claims (Count 5-8) for failure to state a claim;
2. GRANTED WITH LEAVE TO AMEND, as to the claim under Cal. Penal Code § 502(c)(1) (Count 2, CCDAFA) for failure to state a claim;
3. GRANTED WITH LEAVE TO AMEND, as to the unfair claim under the UCL (Count 4) for failure to state a claim;
4. GRANTED WITH LEAVE TO AMEND, as to damages under the CLRA claim (Count 8) for lack of notice;
5. GRANTED WITH LEAVE TO AMEND, as to the CFAA claim (Count 1) for failure to allege statutory damages and failure to state a claim;
6. GRANTED WITHOUT LEAVE TO AMEND, as to standing to assert claims under the laws of states other than California;

15

7. DENIED, as to standing on behalf of a nationwide class without prejudice;

8. GRANTED WITH LEAVE TO AMEND, as to claims for non-purchased Class Printers; and

9. DENIED, as to standing to bring a claim for injunctive relief.

Plaintiffs SHALL file an amended complaint within 60 days of this order. Failure to meet the deadline to file an amended complaint or failure to cure the deficiencies identified on the record or in this order will result in a dismissal of the deficient claims with prejudice. Plaintiff's amendments shall not exceed the scope allowed by the Court in this order.

Dated: November 14, 2022

_____
BETH LABSON FREEMAN
United States District Judge