1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

HENRY SO, et al.,

               Plaintiffs,

     v.

HP, INC.,

               Defendant.

Case No.  22-cv-02327-BLF

**ORDER DENYING IN PART AND GRANTING IN PART WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT**

[Re:  ECF No. 38]

In this case, Plaintiffs Henry So and Daniel Dyke allege that Defendant HP, Inc. ("HP") remotely transmits firmware updates to HP printers that make third-party ink and toner supply cartridges incompatible with those HP printers.  They bring common law and state and federal statutory claims, and they seek to represent various classes of consumers who purchased identified HP printers.

Now before the Court is HP's motion to dismiss.  ECF No. 38 ("MTD"); *see also* ECF No. 42 ("Reply").  Plaintiffs oppose the motion.  ECF No. 40 ("Opp.").  The Court held a hearing on the motion on June 29, 2023.  *See* ECF No. 44.  For the reasons discussed on the record and explained below, the Court DENIES IN PART and GRANTS IN PART WITH LEAVE TO AMEND IN PART and WITHOUT LEAVE TO AMEND IN PART the motion to dismiss the First Amended Complaint.

## I.   BACKGROUND

As alleged in the First Amended Complaint, Defendant HP sells both printers and associated HP-branded ink and toner cartridges for use in its printers.  ECF No. 32 ("FAC") ¶¶ 21-22.  For a cartridge to be compatible with a printer, both the hardware and the software must align.

*Id.* ¶ 26.  Each model of HP printer is compatible only with the associated cartridge model.  *Id.* ¶ 25.  HP has competitors in the market for cartridges, as consumers can choose to buy cartridges from HP ("HP cartridges") or a different company ("third-party cartridges").  *Id.* ¶ 36.  Third-party cartridges can be 25%-75% less expensive than HP cartridges.  *Id.* ¶ 35.

Plaintiffs allege that HP periodically pushes out firmware updates to its printers that prevent consumers from using third-party cartridges.  FAC ¶¶ 66-71.  They claim that the firmware also causes the printer to "display a (false) error message" stating there is a "supply problem, cartridge communication error, or cartridge problem."  *Id.* ¶ 69.  Further, Plaintiffs allege that HP installs technology in its printers that records data about the consumer's printing habits and transmits it back to HP without the consumer's knowledge or consent.  *Id.* ¶¶ 52, 55-58.  They assert that this happens with "all models of HP printers that use ink supply cartridges," and they provide a "non-exhaustive list" of models that they allege were affected ("Class Printers").  *Id.* ¶ 91.

So purchased a new HP OfficeJet Pro 6978 All-in-One Printer on November 22, 2018, and he purchased a new HP ENVY 7885 All-in-One Printer on April 10, 2021, both in California.  FAC ¶¶ 101-04.  So alleges that nothing on the box informed him that these printers would not work with third-party cartridges, nor that information would be collected from the printer.  *Id.*  He had previously owned an HP OfficeJet 6962 All-in-One Printer, with which he used both HP cartridges and third-party cartridges.  *Id.* ¶ 105.  So alleges that in or around December 2021, HP sent out a malicious firmware update intended to affect printers using HP95X, 90X, 63, and 65 series of cartridges.  *Id.* ¶ 108.  The firmware allegedly altered the code and data of the Class Printers such that third-party cartridges would no longer work.  *Id.*  On or around December 16, 2021, So's OfficeJet Pro 6978 stopped working and indicated it had a supply problem.  *Id.* ¶ 110.  So then purchased replacement HP cartridges to use with the printer.  *Id.*

Dyke purchased an HP OfficeJet Pro 6978 All-in-One Printer from HP in or around January 2020.  FAC ¶ 94.  Approximately three or four months prior to the filing of the FAC, Dyke inserted a third-party cartridge and the printer stopped working.  *Id.* ¶ 96.  He alleges that he spent about ten hours trying to determine why the printer was not working, and he states that he

United States District Court
Northern District of California

1   updated the firmware as part of his troubleshooting process.  *Id.*  Dyke alleges that the printer will

2   not print or scan, and he receives an "error message indicating non-HP cartridges are detected."

3   *Id.* ¶ 97.

4        The FAC was filed on January 13, 2023.  *See* FAC.  The FAC asserts claims for (1)

5   violation of the federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §§ 1030(a)(5)(A),

6   1030(a)(2)(C), and 1030(a)(4), FAC ¶¶ 127-53; (2) violation of the California Comprehensive

7   Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502 *et seq.*, FAC ¶¶ 154-

8   69; (3) violation of the unlawful prong of the California Unfair Competition Law ("UCL"), Cal.

9   Bus. & Prof. Code § 17200 *et seq.*, FAC ¶¶ 170-78; (4) violation of the unfair prong of the UCL,

10  Cal. Bus. & Prof. Code § 17200 *et seq.*, FAC ¶¶ 179-89; (5) violation of the fraud prong of the

11  UCL, Cal. Bus. & Prof. Code § 17200 *et seq.*, FAC ¶¶ 190-200; (6) violation of the California

12  False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*, FAC ¶¶ 201-15; (7)

13  fraud by omission, FAC ¶¶ 216-31; (8) violation of the California Consumer Legal Remedies Act

14  ("CLRA"), Cal. Civ. Code § 1770(a)(5) *et seq.*, FAC ¶¶ 232-46; and (9) violation of the Florida

15  Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 50.201 *et seq.*, FAC ¶¶  247-

16  65.

17       Plaintiffs seek to represent one class and five subclasses.  FAC ¶¶ 114-26.  The Device

18  Owner Class includes all persons and entities in the United States who own a Class Printer or

19  similar HP InkJet Printer.  *Id.* ¶ 115.  The California Device Owner Subclass and Florida Device

20  Owner Subclass are for individuals who reside in California and Florida, respectively.  *Id.*  The

21  Damages Subclass is a nationwide class of all persons and entities who own a Class Printer that

22  displayed a diagnostic error due to HP's transmission of a firmware update.  *Id.*  The California

23  Subclass includes all persons and entities residing in California and states with similar consumer

24  protection statutes who own a Class Printer that displayed a diagnostic error due to HP's

25  transmission of a firmware update.  *Id.*  And the Florida Subclass includes all persons and entities

26  residing in Florida who own a Class Printer that displayed a diagnostic error due to HP's

27  transmission of a firmware update.  *Id.*

28       Defendant HP filed a motion to dismiss the FAC.  *See* MTD.

United States District Court
Northern District of California

## II.   REQUEST FOR JUDICIAL NOTICE

Defendant has requested that the Court judicially notice and/or incorporate by reference four exhibits.  ECF No. 39 ("RJN").  The exhibits are: (1) HP's customer support webpage, titled *HP Inkjet Printers – Dynamic Security Enabled Printers*, as of September 20, 2017, RJN ¶ 1, Ex. 1; (2) HP's online Store Page for the OfficeJet Pro 6978, as of June 10, 2019, RJN ¶ 2, Ex. 2; (3) HP's supplies webpage, titled *Printer & Page Yield Overview*, as of September 26, 2018, RJN ¶ 3, Ex. 3; and (4) the printer box packaging for the OfficeJet Pro 6978 during the alleged class period, RJN ¶ 4, Ex. 4.  *See* RJN.  Plaintiffs oppose the request.  ECF No. 41 ("RJN Opp.").

Ordinarily, a district court's inquiry on a Rule 12(b)(6) motion to dismiss is limited to the pleadings.  "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Courts may take judicial notice of facts that are "not subject to reasonable dispute."  Fed. R. Evid. 201(b).  Indisputable facts are those that are "generally known" or that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  *Id.*  "Unlike rule-established judicial notice, incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).  "The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims."  *Id.*  "[U]nlike judicial notice, a court 'may assume [an incorporated document's] contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'"  *Id.* at 1003 (alteration in original) (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)).  But "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint."  *Id.*  "This admonition is, of course, consistent with the prohibition against resolving factual disputes at the pleading stage."  *Id.*

Exhibit 4 is the packaging of the printer "during the alleged class period."  RJN ¶ 4, Ex. 4.  "Judicial notice is proper over . . . images of packaging in consumer protection advertising

actions." *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1120 (S.D. Cal. 2021) (collecting cases).  So refers to the printer box in the FAC, stating that nothing on the box informed him that he could not use third-party cartridges, that HP would collect information from the printer about the type of cartridge he was using, or that HP would use the information it collected to send software updates.  FAC ¶ 102.  Plaintiffs argue that the Court cannot consider the printer box to dispute the allegations in the FAC at the motion to dismiss stage.  *See* RJN Opp.  The Court agrees.  "A court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Parziale v. HP, Inc.*, No. 5:19-cv-05363-EJD, 2020 WL 5798274, at *3 (N.D. Cal. Sept. 29, 2020) (quoting *Aledlah v. S-L Distribution Co., LLC*, No. 20-cv-00234-JSC, 2020 WL 2927980, at *3 (N.D. Cal. June 3, 2020)).  "[I]t is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja, Inc.*, 899 F.3d at 1003.  The printer box states: "Dynamic security enabled printer.  Only intended to be used with cartridges using an HP original chip.  Cartridges using a non-HP chip may not work, and those that work today may not work in the future."  RJN, Ex. 4.  This contradicts Plaintiff So's allegations about what he read on the printer box.  FAC ¶ 102.  Exhibit 4 contradicts the facts pled in the FAC, and "the Court finds that the information provided on the box is a disputed issue of fact that is not properly decided at the motion to dismiss stage." *See Parziale*, 2020 WL 5798274, at *3.

Exhibits 1-3 are HP webpages as they appeared on specified dates.  "Judicial notice is proper over websites . . . in consumer protection advertising actions." *Stewart*, 537 F. Supp. 3d at 1120 (collecting cases); *see also Caldwell v. Caldwell*, No. C 05-4166 PJH, 2006 WL 618511, at *4 (N.D. Cal. Mar. 13, 2006) ("[W]ebsites and their contents may be proper subjects for judicial notice.").  The exhibits are not current versions of the webpages, and they were obtained from the Internet Archive's WayBack Machine.  RJN at 1.  "[D]istrict courts in this circuit have routinely taken judicial notice of content from the Internet Archive's Wayback Machine." *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 829 (N.D. Cal. 2019) (quoting *U.S. ex rel. Hong v. Newport*

*Sensors, Inc.*, No. SACV 13-1164-JLS (JPRx), 2016 WL 8929246, at *3 (C.D. Cal. May 19, 2016)).  Plaintiff Dyke alleges that he purchased the printer online, and he "researched the printer before purchase and did not see anything indicating that third party (or non-HP-branded) ink cartridges would not work with the printer."  FAC ¶ 94.  Dyke "does not recall seeing any such disclosures during his purchase product."  *Id.*  Plaintiff So alleges that prior to purchasing the OfficeJet Pro 6978, he "researched online and looked at user reviews" and in doing so "never saw any information that he could not use non-HP branded ink cartridges"; "never saw any information that HP would collect information from his printer that would inform HP of the type of ink cartridge he was using"; and "never saw any information that HP would use the information it surreptitiously collected to then send software updates that would render his printer nonfunctional."  FAC ¶ 101.  Plaintiffs argue that the three webpages— HP's customer support webpage, titled *HP Inkjet Printers – Dynamic Security Enabled Printers* (as of September 20, 2017); the online Store Page for the OfficeJet Pro 6978 (as of June 10, 2019); and HP's supplies webpage, titled *Printer & Page Yield Overview* (as of September 26, 2018)—are not properly incorporated by reference because they are not mentioned in the FAC.  RJN Opp. at 5-6.  Defendant argues that the FAC "alludes to and depends on" these webpages because Plaintiffs allege they researched the printers before purchase, and thus would have encountered these webpages.  RJN at 2-3.  The Court finds Defendant's argument unconvincing.  Further, the Court credits Plaintiffs' argument as to dates.  *See* RJN Opp. at 3-4.  The webpages are dated September 20, 2017; June 10, 2019; and September 26, 2018.  *See* RJN ¶¶ 1-3.  Plaintiff Dyke purchased his OfficeJet Pro 6978 in or around January 2020, and Plaintiff So purchased his OfficeJet Pro 6978 on November 22, 2018.  FAC ¶¶ 94, 101.  They both presumably did their research at some point prior to purchase.  *See id.*  It is not clear if these webpages were the same on the dates of purchase.  Further, the same problem remains as with the printer box: "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint."  *Khoja*, 899 F.3d at 1003.

The Court will GRANT judicial notice of these documents, but it declines to use them for the purpose that Defendant requests.

United States District Court
Northern District of California

### III.    ARTICLE III STANDING – RULE 12(B)(1)

"[T]he 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 U.S. at 560-61). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).

#### A.    Dyke's Standing Under California Law

HP argues that Dyke does not have standing to assert claims under the law of any state other than Florida, and he therefore does not have standing to bring Counts 3-8 under California law. MTD at 20. Plaintiffs do not argue otherwise in the opposition. *See* Opp.

"Courts in the Ninth Circuit have consistently held that a plaintiff in a putative class action lacks standing to assert claims under the laws of states other than those where the plaintiff resides or was injured." *Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 908 (N.D. Cal. 2019) (collecting cases). Because Plaintiff Dyke resides in and was injured in Florida, *see* FAC ¶¶ 93-98, he does not have standing to assert claims under the laws of any other states. Therefore, Plaintiff Dyke cannot assert claims under California state law.

The motion to dismiss Counts 3-8 to the extent brought under California law as to Plaintiff Dyke for lack of standing is GRANTED WITHOUT LEAVE TO AMEND.

#### B.    Standing as to Other Printers

HP argues that Plaintiffs do not have standing to assert their claims as to any printers other than the OfficeJet Pro 6978. MTD at 18-20. HP first argues that while Plaintiff So references three printers in the FAC—OfficeJet Pro 6978, OfficeJet Pro 6962, and ENVY 7885—he only alleges injury as to the OfficeJet Pro 6978. *Id.* at 18-19. Defendant next argues that Plaintiffs have not alleged facts sufficient to show substantial similarity of the Class Printers to the OfficeJet Pro 6978. *Id.* at 19-20.

As to Defendant's first argument, Plaintiff So does not contest that he has alleged injury as

1    to any printer other than the OfficeJet Pro 6978, and the Court agrees.  *See* Opp.  But Plaintiffs do

2    counter that they have alleged sufficient facts to demonstrate substantial similarity between the

3    OfficeJet Pro 6978 and other putative Class Printers.  Opp. at 12-15.

4          As the Court previously explained, it takes the "substantially similar" approach to

5    analyzing standing challenges, under which "a plaintiff may have standing to assert claims for

6    unnamed class members based on products he or she did not purchase so long as the products and

7    alleged misrepresentations are substantially similar."  *Romero v. HP, Inc.*, No. 16-cv-05415-LHK,

8    2017 WL 386237, at *7 (N.D. Cal. Jan. 27, 2017) (quoting *Miller v. Ghirardelli Chocolate Co.*,

9    912 F. Supp. 2d 861, 869 (N.D. Cal. 2012)).  But a plaintiff cannot "simply provide[] a list of

10   products with a bare allegation that the misrepresentations are the same as for the [product]

11   Plaintiff purchased."  *Id.* at *8; *see also Arroyo v. TP-Link USA Corp.*, No. 5:14-cv-04999-EJD,

12   2015 WL 5698752, at *4 (N.D. Cal. Sept. 29, 2015).  Courts look to factors such as "whether the

13   challenged products are of the same kind . . . and whether each of the challenged products bears

14   the same alleged mislabeling." *Leonhart v. Nature's Path Foods, Inc.*, No. 13-cv-00492-BLF,

15   2014 WL 6657809, at *3 (N.D. Cal. Nov. 21, 2014) (quoting *Wilson v. Frito-Lay N. Am.*, 961 F.

16   Supp. 2d 1134, 1141 (N.D. Cal. 2013)).  Plaintiffs must provide "facts that indicate what

17   misrepresentations [or omissions] were made with respect to each printer, and whether the

18   misrepresentations were false [or omissions were required to be disclosed] as to each printer."  *See*

19   *Romero*, 2017 WL 386237, at *8.

20         Plaintiffs allege that the firmware transmissions affected many models of HP printers and

21   that "the Class Printers comprise all models of HP Printers that use ink supply cartridges,

22   including HP DeskJet, ENVY, OfficeJet, and OfficeJet Pro printers and all-in-ones," and they

23   provide a "non-exhaustive list of HP printers and all-in-one products and product series."  FAC ¶

24   91.  They allege that "all of the Class Printers used substantially similar ink cartridges in a

25   substantially similar manner, that HP collected information from all Class Printers in substantially

26   the same manner, used this information from all Class Printers in a substantially similar manner to

27   target those users' printers that had been using non-HP-branded ink cartridges to render those

28   printers nonfunctional, in order to force those users to purchase specific partners from their

8

1    printers in order that the printers would once again function." *Id.* ¶ 92.  The continue that

2    "[s]pecifically, HP used the software updates to disable Class Printers and force users to purchase

3    exorbitantly priced HP-branded ink cartridges in order to have a functioning printer." *Id.*

4         Defendant argues that Plaintiffs have included only conclusory allegations and failed to

5    identify any affirmative misrepresentation or omission for the putative Class Printers.  MTD at 19.

6    The Court agrees.  Plaintiffs have failed to allege "facts that indicate what misrepresentations [or

7    omissions] were made with respect to each printer, and whether the misrepresentations were false

8    [or omissions were required to be disclosed] as to each printer." *See Romero*, 2017 WL 386237, at

9    *8.  Plaintiffs therefore do not have standing to bring claims for printers other than the OfficeJet

10   Pro 6978.

11        The motion to dismiss claims for other printers for lack of standing is GRANTED.

12   Because the Court already once granted leave to amend, this dismissal is WITHOUT LEAVE TO

13   AMEND.

14   **IV.    FAILURE TO STATE A CLAIM – RULE 12(B)(6)**

15        "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

16   claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation*

17   *Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d

18   729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts

19   as true all well-pled factual allegations and construes them in the light most favorable to the

20   plaintiff. *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  But the Court need

21   not "accept as true allegations that contradict matters properly subject to judicial notice" or

22   "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

23   inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal citation

24   omitted).  While a complaint need not contain detailed factual allegations, it "must contain

25   sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

26   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

27   570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable

28   inference that the defendant is liable for the misconduct alleged." *Id.*  On a motion to dismiss, the

United States District Court
Northern District of California

1   Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC*

2   *Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*,

3   720 F.2d 578, 581 (9th Cir. 1983).

4       In deciding whether to grant leave to amend, the Court must consider the factors set forth

5   by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the

6   Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003). A district

7   court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1)

8   undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by

9   amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence*

10  *Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries

11  the greatest weight." *Id.* However, a strong showing with respect to one of the other factors may

12  warrant denial of leave to amend. *Id.*

13      **A.    Fraud**

14          **1.    Rule 9(b)**

15      When a party pleads a cause of action for fraud or mistake, it is subject to the heightened

16  pleading requirements of Rule 9(b). "In alleging fraud or mistake, a party must state *with*

17  *particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis

18  added). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged

19  generally." *Id.* Rule 9(b) requires that the circumstances constituting any alleged fraud be pled

20  "specific[ally] enough to give defendants notice of the particular misconduct . . . so that they can

21  defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford*

22  *Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Bly-Magree v. California*, 236 F.3d

23  1014, 1019 (9th Cir. 2001)). Claims of fraud must be accompanied by the "who, what, when,

24  where, and how" of the misconduct alleged. *Id.* If a "claim is said to be 'grounded in fraud' or to

25  'sound to fraud,' [then] the pleading of that claim as a whole must satisfy that particularity

26  requirement of Rule 9(b)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir.

27  2003).

28      The applicability of Rule 9(b) hinges not on the elements of the claim but rather on the

United States District Court
Northern District of California

1   nature of the allegations themselves: "Rule 9(b) applies to 'averments of fraud' in all civil cases in

2   federal district court," including "particular averments of fraud" even when fraud is not an

3   essential element of the claim.  *Vess*, 317 F.3d at 1103; *see also Kearns*, 567 F.3d at 1124 ("Where

4   fraud is not an essential element of a claim, only those allegations of a complaint which aver fraud

5   are subject to Rule 9(b)'s heightened pleading standard.").  Fraud can thus be averred "by

6   specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word

7   'fraud' is not used)."  *Vess*, 317 F.3d at 1105 (citations omitted).

8              **2.  Plaintiff So**

9         Defendant HP seeks to dismiss the following claims as to Plaintiff So on the basis that he

10   has not stated a claim as to either an affirmative misrepresentation or actionable omission: Counts

11   4-8 in their entirety, Count 1 under 18 U.S.C. § 1030(a)(4), Count 2 under California Penal Code §

12   502(c)(1), and Count 3 to the extent based on any of the foregoing counts.  MTD at 8-9, 10-12.

13        "Broadly stated: The UCL prohibits 'any unlawful, unfair or fraudulent business act or

14   practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by the

15   FAL' ([Cal. Bus. & Prof. Code] § 17200); the FAL prohibits advertising 'which is untrue or

16   misleading, and which is known, or which by the exercise of reasonable care should be known, to

17   be untrue or misleading' ([*id.* at] § 17500); and the CLRA prohibits specified 'unfair methods of

18   competition and unfair or deceptive acts or practices' ([Cal.] Civ. Code § 1770, subd. (a))."  *Hill v.*

19   *Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1301 (2011) (alterations omitted).  All three statutes

20   prohibit fraudulent misrepresentations and omissions.  *See In re Seagate Tech. LLC Litig.*, 233 F.

21   Supp. 3d 776, 788 (N.D. Cal. 2017).  Further, courts in this district have consistently held that

22   "plaintiffs in misrepresentation cases must allege that they actually read the challenged

23   representations" to state a claim.  *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-

24   MD-02752-LHK, 2017 WL 3727318, at *27-28 (N.D. Cal. Aug. 30, 2017) (citation omitted)

25   (dismissing UCL fraud claim for failure to plead actual reliance); *see also Bruton v. Gerber Prods.*

26   *Co.*, No. 12-CV-02412-LHK, 2014 WL 172111, at *6, *9 (N.D. Cal. Jan. 15, 2014) (citing *In re*

27   *Tobacco II Cases*, 46 Cal. 4th 298 (2009)) (dismissing UCL, FAL, and CLRA claims for lack of

28   statutory standing based on plaintiff's failure to allege he viewed alleged misrepresentations).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    "Under California law, a claim of fraud by omission requires a showing of (1) the

2    concealment or suppression of material fact, (2) a duty to disclose the fact to the plaintiff, (3)

3    intentional concealment with intent to defraud, (4) justifiable reliance, and (5) resulting damages."

4    *Edwards v. FCA US LLC*, No. 22-cv-01871-WHO, 2022 WL 1814144, at *3 (N.D. Cal. June 2,

5    2022) (quoting *Lewis v. Google LLC*, 851 F. App'x 723, 725 (9th Cir. 2021)).

6    As to the CFAA claim, 18 U.S.C. § 1030(a)(4) provides that whoever "knowingly and with

7    intent to defraud, accesses a protected computer without authorization, or exceeds authorized

8    access, and by means of such conduct furthers the intended fraud and obtains anything of value,

9    unless the object of the fraud and the thing obtained consists only of the use of the computer and

10   the value of such use is not more than $5,000 in any 1-year period" shall be punished in

11   accordance with the statute. 18 U.S.C. § 1030(a)(4). As to the CDAFA claim, California Penal

12   Code § 502(c)(1) imposes liability on any person who "[k]nowingly accesses and without

13   permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer

14   system, or computer network in order to either (A) devise or execute any scheme or artifice to

15   defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data." Cal.

16   Penal Code § 502(c)(1).

17               a.   Misrepresentation

18   HP argues that the fraud-based claims should be dismissed because So does not plead an

19   actionable misrepresentation by HP. MTD at 8-19. Plaintiffs assert that the error messages they

20   saw on their printers constituted affirmative misrepresentations. Opp. at 3-6. In the Order

21   deciding the motion to dismiss the Complaint, the Court explained that the parties agreed that So

22   could not allege reliance on these error messages because they did not appear until after purchase

23   of the printers, and the Court agreed with the parties. ECF No. 5-6. Now, Plaintiffs argue that

24   while they did not rely on the error messages in deciding to purchase the printers, they did rely on

25   these messages in deciding to purchase the HP cartridges. Opp. at 3-4. Defendant counters that

26   the affirmative misrepresentation theory still fails for several reasons. Reply at 2-5. HP argues

27   that there is no causation and/or injury because Plaintiffs were not harmed by the purchase of the

28   HP cartridges, as those cartridges allowed the printers to work. *Id.* at 3-4. HP also asserts that the

affirmative misrepresentation claim must fail because the error messages were not false.  *Id.* at 4-5.

Plaintiff So has not stated a claim based on an affirmative misrepresentation.  So alleges that after the firmware transmission, "the printer falsely indicated that it had a supply problem." FAC ¶ 110.  But as Defendant argues, this statement was not false, as the printer did have a supply problem—the third-party cartridge, which supplied the ink, did not work.  *See* Reply at 4-5. Therefore, Plaintiff So has not stated a claim based on an affirmative misrepresentation.

Defendant's motion to dismiss the fraud-based claims as to an affirmative misrepresentation is GRANTED.  The Court has already granted leave to amend these claims, so this dismissal is WITHOUT LEAVE TO AMEND.

   b.  Omission

HP further argues that any fraud claims based on omission also fail because So does not allege HP concealed a defect central to the printers' function and because the relevant information was disclosed.  MTD at 10-12.  As the Court explained in the prior Order, to allege fraud by omission, the omission must either (1) "be contrary to a representation actually made by the defendant," or (2) "an omission of a fact the defendant was obliged to disclose."  *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1012 (N.D. Cal. 2020) (quoting *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018)).  Here, the first prong is not alleged, so Plaintiff needs to show that HP had a duty to disclose prior to sale that it would send out firmware that would make its printers incompatible with third-party cartridges.  The law about a defendant's duty to disclose in fraudulent omission cases is "marked by general disarray," largely because there are at least two tests to determine whether a defendant has a duty to disclose.  *Hammerling v. Google LLC*, No. 21-cv-09004-CRB, 2022 WL 2812188, at *8 (N.D. Cal. July 18, 2022) (quoting *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1101-02 (N.D. Cal. 2021)).  Again, as the Court explained in its prior Order, the Court agrees with the *Hammerling* decision as to the appropriate test.  *See* 2022 WL 2812188, at *8 (collecting Ninth Circuit and Northern District of California cases adopting this test).  Plaintiff So must allege that HP's omission "either (1) relates to an unreasonable safety hazard or (2) is material, 'central to the product's function,' and meets

United States District Court
Northern District of California

one of the four *LiMandri* factors." *Id.* (quoting *Hodson*, 891 F.3d at 863). "The *LiMandri* factors are (1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; or (4) the defendant makes partial representations but also suppresses some material facts." *Id.* at *7 (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)). The Court provided in the prior Order that Plaintiff must allege that the inability to use a third-party cartridge is "material, central to the product's function, and meets one of the four *LiMandri* factors" and that HP intended to send the firmware updates at the time of purchase.

HP argues that Plaintiff So's claims must fail because it did disclose the information. MTD at 11-12. HP points the Court to the materials of which it seeks judicial notice. *Id.* For the reasons stated above in the discussion of judicial notice, the Court rejects this argument.

HP argues that Plaintiff has not alleged that the defect is central to the function of the printer. MTD at 10-11. Plaintiff So argues that the defect is central to the printer's function because the printer stopped working until he used an HP cartridge. Opp. at 6-8. He points the Court to *Oddo v. United Technologies Corp.*, No. 8:15-cv-01985-CAS(Ex), 2022 WL 577663 (C.D. Cal. Jan. 3, 2022). *See* Opp. at 6-7. In that case, the court was deciding, on a motion for summary judgment, whether the plaintiff's heating ventilation and air conditioning unit ("HVAC") "suffered a central function defect." *Oddo*, 2022 WL 577663, at *10-12. The unit stopped functioning, but was then repaired after the addition of Zerol Ice additive. *Id.* The court stated that there was a genuine dispute of material fact as to whether the air conditioner experienced a central function defect after being injected with the additive, noting that the unit "resumed cooling, but the parties dispute the extent of the repair, and if it goes to the system's central function." *Id.* at *11. The court distinguished the case from a District of Oregon case that the parties cited, noting that here the "air conditioner did stop functioning in a meaningful way when it stopped cooling for a period of time." *Id.* The court went on to say that "the central function of the air conditioner unit was to consistently cool, and because the air conditioner was not able to cool a period of time, there is a question of fact as to whether the unit experienced central function defect." *Id.* at *12. The Court finds that Plaintiff So has adequately alleged, for

14

1   purposes of the motion to dismiss, a defect that was central to the printer's function.  Plaintiff So

2   alleges that his printer stopped working and that it did not start working again until he obtained HP

3   cartridges.  FAC ¶¶ 99-112.  These allegations are sufficient to state a claim.

4        The motion to dismiss any fraud-based claims based on omission is DENIED.

5             c.   Conclusion

6        HP's motion to dismiss Plaintiff So's fraud-based claims is GRANTED WITHOUT

7   LEAVE TO AMEND as to an affirmative misrepresentation and DENIED as to an omission.

8             **3.  Plaintiff Dyke**

9        Defendant HP seeks to dismiss the following claims as to Plaintiff Dyke on the basis that

10  he has not stated a claim as to either an affirmative misrepresentation or actionable omission:

11  Counts 7 and 9 in their entirety, Count 1 under 18 U.S.C. § 1030(a)(4), and Count 2 under

12  California Penal Code § 502(c)(1).  MTD at 9-10, 12-14.

13       The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or

14  practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]"

15  *See* Fla. Sta. § 501.204(1).  Further, the FDUTPA is intended "[t]o protect the consuming public

16  and legitimate business enterprises from those who engage in unfair methods of competition, or

17  unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."

18  *See* Fla. Stat. § 501.202(2).  The Florida Supreme Court has held that deception constitutes a

19  "representation, omission, or practice that is likely to mislead the consumer acting reasonably in

20  the circumstances, to the consumer's detriment."  *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.

21  2d 773, 777 (Fla. 2003) (citation omitted); *Harrison v. Lee Auto Holdings, Inc.*, 295 So. 3d 857,

22  862 (Fla. Dist. Ct. App. 2020).  A FDUTPA claim has three elements: "(1) a deceptive act or

23  unfair practice; (2) causation; and (3) actual damages."  *Rollins, Inc. v. Butland*, 951 So. 2d 860,

24  869 (Fla. Dist. Ct. App. 2006).

25       Defendant argues that Plaintiff Dyke's fraud-based claims fail because he does not allege

26  an actionable misrepresentation and he does not allege an actionable omission.  MTD at 9-10, 12-

27  14.  Plaintiff Dyke argues that he has alleged an actionable misrepresentation and omission.  Opp.

28  at 3-8.  The Court will address each in turn.

United States District Court
Northern District of California

a.   Actionable Misrepresentation

"Under the FDUTPA, 'in order for the consumer to be entitled to any relief . . . , the consumer must not only plead and prove that the conduct complained of was unfair and deceptive but the consumer must also plead and prove that he or she was aggrieved by the unfair and deceptive act.'"   *In re NJOY, Inc. Consumer Class Action Litig.*, No. CV 14-00428 MMM(JEMx), 2015 WL 12732461, at *20 (C.D. Cal. May 27, 2015) (citing *Macias v. HBC of Fla., Inc.*, 694 So. 2d 88, 90 (Fla. Dist. Ct. App. 1997)).   Plaintiff Dyke alleges that he "receive[d] an error message indicating non-HP cartridges are detected."   FAC ¶ 97.   This error message was in no way deceptive, as it accurately stated the reason the printer was not working.   HP's motion to dismiss Plaintiff Dyke's fraud claims as to an actionable misrepresentation is GRANTED.   The Court determines amendment would be futile, so this dismissal is WITHOUT LEAVE TO AMEND.

b.   Omission

Defendant next argues that Plaintiff Dyke has not alleged an actionable omission.   MTD at 12-14.   HP argues that Plaintiff Dyke's claims must fail because it did disclose the information. MTD at 14.   For the reasons stated above in the discussion of judicial notice, the Court rejects this argument.   HP also argues that Plaintiff Dyke's claims fail for the same reasons as Plaintiff So's claims.   *Id.* at 12-13.   Plaintiffs argue that the omissions are actionable for the same reasons.   Opp. at 6-8.

"The FDUTPA (like the UCL) was patterned after the Federal Trade Commission Act ("FTC Act"), and it incorporates, in its definition of what constitutes a violation, '[t]he standards of unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts.'"   *Hall v. SeaWorld Ent., Inc.*, 747 F. App'x 449, 453 (9th Cir. 2018) (quoting Fla. Stat. § 501.203(3)(b)).   The Ninth Circuit stated that "[i]n interpreting the materiality requirement for omission claims under the FTC Act, [it] ha[s] rejected a broad duty to disclose."   *Id.* (citing *F.T.C. v. Simeon Mgmt. Corp.*, 532 F.2d 708, 716 (9th Cir. 1976)).   The Ninth Circuit explained that "[c]onsistent with the California Court of Appeal's interpretation of the UCL in *Rutledge* and our decision in *Hodsdon*, the FTC has stated that for omission claims under the FTC Act, the omitted facts 'are material if they pertain to the central characteristics of the product, such as its

safety, cost, or fitness for the purpose sold.'" *Id.* (quoting *In the Matter of Int'l Harvester Co.*, 104 F.T.C. 949, 1057 (1984)). The Court explained above why Plaintiff So stated an actionable omission under California law, and the same reasoning applies to Plaintiff Dyke's claims under Florida law. Plaintiffs have alleged that the omitted facts "pertain to the central characteristics of the product, such as its . . . fitness for the purpose sold." *Hall*, 747 F. App'x at 453 (quoting *Int'l Harvester*, 104 F.T.C. at 1057). The Court therefore determines that Plaintiff Dyke has adequately alleged his fraud claims based on an actionable omission.

### c. Conclusion

HP's motion to dismiss Plaintiff Dyke's fraud-based claims is GRANTED WITHOUT LEAVE TO AMEND as to an affirmative misrepresentation and DENIED as to an omission.

### B.   CFAA and CDAFA Claims

Defendant also moves to dismiss the CFAA and CDAFA claims on other bases. MTD at 15-18. The Court will address each in turn.

### 1.   Notice of Printer Authentication Procedures

Defendant argues that the CFAA and CDAFA claims must fail because Plaintiffs were exposed to marketing materials that disclosed HP's printer authentication procedures. MTD at 15-16. HP asserts that the claim is based on HP accessing the printers without authorization or permission, but the marketing materials disclosed that the printers were intended to be used only with HP cartridges and that the printers periodically undergo authentication procedures that may render them incompatible with third-party cartridges. *Id.* But for the reasons the Court stated above in its judicial notice discussion, the Court will not consider that Plaintiffs had seen these specific materials and disclosures for purposes of the motion to dismiss. The Court therefore DENIES Defendant's motion to dismiss the CFAA and CDAFA claims on the basis that Plaintiffs were on notice of HP's printer authentication procedures.

### 2.   Plaintiff Dyke's Harm

Defendant argues that Plaintiff Dyke's CFAA claims under §§ 1030(a)(2)(C) and (a)(5)(A) and CDAFA claims under §§ 502(c)(2)-(5) fail because he does not allege the firmware updates caused any harm. MTD at 16-18. Defendant argues that Plaintiff Dyke did not allege any harm

United States District Court
Northern District of California

1    because he alleges that his printer stopped working first, and he *later* updated the firmware as part

2    of the trouble-shooting process.  *Id.*

3        Under Section 1030(g) of the CFAA, "[a]ny person who suffers damage or loss by reason

4    of a violation . . . may maintain a civil action against the violator."  18 U.S.C. § 1030(g).  Section

5    1030(a)(5)(A) punishes whoever "knowingly causes the transmission of a program, information,

6    code, or command, and as a result of such conduct, intentionally causes damage without

7    authorization, to a protected computer." 18 U.S.C. § 1030(a)(5)(A).  Section 1030(a)(2)(C)

8    punishes whoever "intentionally accesses a computer without authorization or exceeds authorized

9    access, and thereby obtains . . . information from any protected computer."  18 U.S.C. §

10   1030(a)(2)(C).  "[E]very claim, including [the] information claim under subsection 1030(a)(2)(C),

11   requires—either directly by the substantive terms of the claim itself or indirectly by the

12   requirements of Section 1030(g)—either 'damage' or 'loss.'"  *Czech v. Wall St. on Demand, Inc.*

13   674 F. Supp. 2d 1102, 1108 (D. Minn. 2009) (citing *SKF USA, Inc. v. Bjerkness*, 636 F. Supp. 2d

14   696, 720 (N.D. Ill. 2009)).  "[T]he term 'damage' means any impairment to the integrity or

15   availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8).  "[T]he term

16   'loss' means any reasonable cost to any victim, including the cost of responding to an offense,

17   conducting a damage assessment, and restoring the data, program, system, or information to its

18   condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages

19   incurred because of interruption of service."  18 U.S.C. § 1030(e)(11).

20        Under the CDAFA, a plaintiff "must allege that [they] suffered damage or loss by reason

21   of a violation of Section 502(c) of the California Penal Code."  *Siebert v. Gene Sec. Network, Inc.*,

22   No. 11-cv-01987-JST, 2013 WL 5645309, at *11 (N.D. Cal. Oct. 16, 2013).  Section 502(c)(2)

23   holds liable any person who "[k]nowingly accesses and without permission takes, copies, or

24   makes use of any data from a computer, computer system, or computer network, or takes or copies

25   any supporting documentation, whether existing or residing internal or external to a computer,

26   computer system, or computer network." Cal. Penal Code § 502(c)(2).  Section 502(c)(3) holds

27   liable any person who "[k]nowingly and without permission uses or causes to be used computer

28   services."  Cal. Penal Code § 502(c)(3).  Section 502(c)(4) holds liable any person who

United States District Court
Northern District of California

"[k]nowingly accesses and without permission adds, alters, damages, deletes, or destroys any data, computer software, or computer programs which reside or exist internal or external to a computer, computer system, or computer network." Cal. Penal Code § 502(c)(4). And Section 502(c)(5) holds liable any person who "[k]nowingly and without permission disrupts or causes the disruption of computer services or denies or causes the denial of computer services to an authorized user of a computer, computer system, or computer network." Cal. Penal Code § 502(c)(5).

Defendant argues that Plaintiff Dyke has not alleged any damage or loss from the firmware update. MTD at 16-18. The Court agrees. Plaintiff Dyke alleges that he inserted a third-party cartridge and the printer did not work. FAC ¶ 96. He spent about ten hours trying to troubleshoot, and he updated the firmware as part of the troubleshooting process. *Id.* His printer will not print, scan, or connect to the computer. *Id.* ¶ 97. He receives an error message stating that non-HP cartridges are detected. *Id.* It is not clear from the FAC the exact series of events and what problems started only after the firmware update.

The Court therefore DISMISSES Plaintiff Dyke's CFAA claims under §§ 1030(a)(2)(C) and (a)(5)(A) and CDAFA claims under §§ 502(c)(2)-(5). Because Dyke has not yet had an opportunity to amend these claims, the Court will dismiss WITH LEAVE TO AMEND.

### 3.  Statutory Damages Under CFAA

Plaintiffs brings a claim under the CFAA, citing three subsections: 18 U.S.C. §§ 1030(a)(5)(A), 1030(a)(2)(C), and 1030(a)(4). FAC ¶¶ 127-53. HP argues that the CFAA claim should be dismissed because Plaintiffs do not allege the required statutory damages of $5,000. MTD at 15. The CFAA requires Plaintiffs to allege $5,000 in damages. *See* 18 U.S.C. § 1030(g). Under the CFAA, a class of plaintiffs may aggregate damages "so long as those damages arose from the same act by a defendant." *In re Apple & AT & TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1308 (N.D. Cal. 2008); *see also In re Toys R Us, Inc. Privacy Litig.*, No. 00-CV-2746, 2001 WL 34517252, at *11 (N.D. Cal. Oct. 9, 2001). Plaintiffs point to one act by Defendant: the transmission of a firmware update in December 2021. Opp. at 8 (citing FAC ¶¶ 108, 110). Plaintiffs argue that the transmission required class members "to expend money, time, and labor to

1   investigate and repair and/or replace disabled Class Printers." *Id.* at 9 (quoting FAC ¶ 152).

2   Plaintiff So alleges that due to the firmware update, he could no longer use a third-party cartridge

3   that he had purchased for $69.99 and that the value of his OfficeJet Pro 6978, which he purchased

4   for $79.99 plus tax, dropped.  FAC ¶¶ 150-51.  Plaintiffs argue that even if the Court limits the

5   class to purchasers of the OfficeJet Pro 6978, each class member would have had to incur only

6   $0.32 in damages to meet the threshold through aggregation.  Opp. at 9.  The Court determines

7   that Plaintiffs have adequately alleged statutory damages for purposes of the motion to dismiss.

8           The motion to dismiss the CFAA claim for failure to plead statutory damages is DENIED.

9       **C.    UCL Unlawful Claim**

10          The UCL prohibits any "unlawful, unfair or fraudulent business practice and unfair,

11  deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  The California

12  Supreme Court has clarified that the UCL, because it is "written in the disjunctive," prohibits three

13  separate types of unfair competition: (1) unlawful acts or practices, (2) unfair acts of practices, and

14  (3) fraudulent acts or practices.  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20

15  Cal. 4th 163, 180 (1999); *accord Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th

16  Cir. 2012).  To plead a UCL claim, a plaintiff's allegations must show that a defendant's conduct

17  violates one of these three "prongs." *Id.*

18          Plaintiff So brings  brings a claim under the unlawful prong of the UCL.  FAC ¶¶ 170-78

19  (Count 3).  HP argues that dismissal of Counts 1-2 and 4-9 necessitates dismissal of Count 3

20  because it is derivative of those other causes of action.  MTD at 18.  The Court has not dismissed

21  all of the other counts, so Defendant's argument fails.

22          Defendant's motion to dismiss Count 3 is DENIED.

23      **V.    ORDER**

24          For the foregoing reasons, IT IS HEREBY ORDERED that:

25          1.      HP's motion to dismiss Counts 3-8 to the extent brought under California state law

26  as to Plaintiff Dyke for lack of standing is GRANTED WITHOUT LEAVE TO AMEND;

27          2.      HP's motion to dismiss the claims as to all printers other than the OfficeJet Pro

28  6978 is GRANTED WITHOUT LEAVE TO AMEND;

United States District Court
Northern District of California

20

3.      HP's motion to dismiss Counts 4-8 in their entirety, Count 1 under 18 U.S.C. § 1030(a)(4), Count 2 under California Penal Code § 502(c)(1), and Count 3 to the extent based on any of the foregoing counts as to Plaintiff So is GRANTED WITHOUT LEAVE TO AMEND as to an affirmative misrepresentation and DENIED as to an omission;

4.      HP's motion to dismiss Counts 7 and 9; Count 1 under 18 U.S.C. § 1030(a)(4); and Count 2 under California Penal Code § 502(c)(1) as to Plaintiff Dyke is GRANTED WITHOUT LEAVE TO AMEND as to an affirmative misrepresentation and DENIED as to an omission;

5.      HP's motion to dismiss Counts 1 and 2 on the basis that Plaintiffs had notice is DENIED;

6.      HP's motion to dismiss as to Plaintiff Dyke Count 1 as brought under §§ 1030(a)(2)(C) and (a)(5)(A) and Count 2 as brought under §§ 502(c)(2)-(5) is GRANTED WITH LEAVE TO AMEND;

7.      HP's motion to dismiss Count 1 for failure to allege statutory damages is DENIED; and

8.      HP's motion to dismiss Count 4 for failure to allege unlawful practices is DENIED. Plaintiffs SHALL file an amended complaint within 30 days of this order.  Failure to meet the deadline to file an amended complaint or failure to cure the deficiencies identified on the record or in this order will result in a dismissal of the deficient claims with prejudice.  Plaintiff's amendments shall not exceed the scope allowed by the Court in this order.

**IT IS SO ORDERED.**

Dated:  July 17, 2023

_____
BETH LABSON FREEMAN
United States District Judge